**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Case No. 23-cr-197-BAH |
| | ) |
| | ) |
| KEITH BROWN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**SENTENCING MEMORANDUM OF KEITH BROWN**

Keith Brown entered the Capitol Building on January 6, 2021 with his 18-year-old daughter.  He engaged in no violence or disorderly conduct.  He exited the building after spending 19 minutes inside.  Brown pled guilty to parading/demonstrating in the Capitol Building under 40 U.S.C. § 5104(e)(2)(G).  He has no criminal history and is deeply remorseful for his conduct that day.  His large family financially depends on Brown's continued employment.  Brown respectfully requests that the Court impose the sentence recommended by the Probation Office—12 months' probation, a $4,452 fine, and $500 in restitution.

**Factual background**

    **A.**    **Brown's background, family, employment history, and character**

Brown, 62, is a senior mortgage underwriter who resides in Phillipsburg, New Jersey.  As the Probation Office's interviews here attest, Brown is a family man.  Presentence Investigation Report (PSR), ECF 15, ¶¶ 28-35.  He and his wife have been married happily since 1988.  Together they raise, and have raised, nine children between the ages of 15 and 32.

Mrs. Brown notes that her husband is a good father and a hard worker.  He "essentially works to keep the family financially afloat." PSR, ¶ 32.  Keith helps oversee a "Christian

1

household with high expectations for his children." *Id.*  One of their children recently graduated from the United States Military Academy at West Point.  Four of the children (three sons and a daughter) still reside with, and are financially dependent on, Brown.  ¶ 33.

Brown has no criminal history.  PSR, ¶¶ 22-24.

Brown is the primary source of income for his household.  PSR, ¶¶ 44-45.  Accordingly, if he were to lose his job as a result of incarceration, it would cut the family's financial lifeline. The family would not be able to make mortgage payments on the home.

**B.      The misdemeanor conviction and presentence investigation report**

On June 23, 2023, Brown pled guilty to one count of parading/demonstrating in the Capitol Building under § 5104(e)(2)(G).

After attending the former president's January 6 rally on the Ellipse, Brown and his 18-year-old daughter followed the crowd toward the Capitol.  Brown entered the building at 2:25 p.m.  PSR,  ¶ 14.  Inside, he chanted "Stop the Steal." *Id.*,  ¶ 15.  At one point, Brown passed through the Crypt.  Shortly thereafter, he walked out the South Door Vestibule at 2:44 p.m., having spent 19 minutes inside.  *Id.*, ¶ 16.

Brown and his family cooperated with the authorities.  In February 2022, Brown's daughter agreed to be interviewed by FBI agents.  PSR, ¶ 17.  Her father encouraged her to do so and to be forthcoming.  Brown's daughter described the entire day's events to the agents, admitting that she and her father had entered the building.  She described how her father had asked a police officer how to exit the Capitol shortly after they were notified that they should leave the premises.  *Id.*, ¶ 18.

Pursuant to U.S.S.G. §1B1.9, the Guidelines do not apply to Brown's conviction, as it is a

Class B misdemeanor.  PSR, ¶ 21.  The Probation Office recommends a sentence of 12 months'

probation, a fine of $4,452, and a $500 restitution payment.  ECF 16.  It reasons as follows:

> Though Keith Brown was a willing participant in what became a large-scale attack on the
> United States Capitol, his participation in this offense appears to be minimal.
> Additionally, Mr. Brown possesses no criminal history, mental health or substance
> dependency issues that might require a greater level of supervision. Mr. Brown, as noted
> by his family, has always been and continues to be the primary source of income in his
> home; therefore, any period of confinement would certainly negatively impact the
> stability of his family. A review of Mr. Brown's social media presence revealed some
> generally politically motivated content, however, it did not appear to incite violence or
> civil discourse. During his interview, Mr. Brown expressed remorse for his actions and
> decisions on January 6, 2021, and accepted responsibility for his participation. Therefore,
> this writer would respectfully recommend a period of probation to continue to ensure his
> positive contributions to his community.

ECF 16.

## Argument

### I.    Sentencing procedure

As it knows, the Court has broad discretion to consider nearly every aspect of a particular

case, and a particular defendant, in fashioning an appropriate sentence.  *United States v. Booker*,

543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552

U.S. 85 (2007).  Although the Court must first calculate the appropriate sentencing range under

the Guidelines, it is not bound by the Guidelines or Guidelines Policy Statements.  It may make

its own policy judgments, even if different from those in the Guidelines.  *Kimbrough*, 552 U.S. at

101.

The Court must merely impose a sentence consistent with the terms of 18 U.S.C. §

3553(a) and § 3661.  As the Court knows, the cardinal requirement of § 3553(a) is that the "court

shall impose a sentence sufficient, but not greater than necessary to comply with the purposes of

[§ 3553(a)]. . ." § 3553(a).

As the Court also knows, it may not impose a "split" sentence on Brown's Class B misdemeanor conviction, i.e., a sentence that includes both prison time and probation.  *United States v. Little*, 2023 U.S. App. LEXIS 21650 (D.C. Cir. Aug. 18, 2023).

**II.     The § 3553(a) factors favor the Probation Office's recommended sentence**

**A.     The nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(1))**

As the Probation Office noted, Brown's "participation in this offense appears to be minimal." ECF 16.  Brown is guilty of a Class B misdemeanor under § 5104(e)(2)(G) because he demonstrated inside the Capitol (chanting "Stop the Steal").  But he did not obstruct law enforcement, destroy property, go in search of members of Congress, or behave in a disorderly fashion.  After a law enforcement officer directed him to leave the building, Brown promptly complied.  PSR, ¶ 18.  Brown also cooperated with law enforcement by encouraging his daughter to fully answer the questions of interviewing agents.  *Id.*, ¶ 17.

The fact that Brown is a first-time offender is an appropriate reason for imposing a sentence that does not include incarceration.  *E.g.*, *United States v. Tomko*, 562 F.3d 558, 560 (3d Cir. 2009) (affirming probationary sentence based partly on defendant's "negligible criminal history");*United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008); *United States v. Munoz-Nava*, 524 F.3d 1142, 1143 (10th Cir. 2008).  Brown's true remorse for his conduct— which he will express to the Court in his allocution—is another reason.  *E.g.*, *United States v. Howe*, 543 Fed. 3d 128, 138 (3d Cir. 2008).

Above all, this factor favors a sentence of probation given the family's financial dependence on Brown.  As indicated, Brown is the primary source of financial support for his wife and four children living at home.  PSR, ¶¶ 44-45.  If Brown were sentenced to a term of incarceration, he would lose his job.  The family would not be able to afford mortgage payments

on the home.  These severe collateral consequences are disproportionate to a Class B misdemeanor offense, as the Probation Office recognized.  ECF 16, p. 1.  As the Probation Office noted, they would destabilize Brown's large family.  *Id.*

B.     **Avoiding unwarranted sentence disparities (§ 3553(a)(6))**

Section 3553(a) requires courts to fashion a sentence in a way that avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6).  Sentencing Brown to a term of incarceration would create many unwarranted sentence disparities.

First, a term of incarceration here would be inconsistent with virtually every January 6-related sentence this Court has imposed on the § 5104(e)(2)(G) charge.  In nearly every such case—and possibly in all of them—the Court has imposed a term of probation rather than incarceration.  *U.S. v. Lollis*, 21-cr-671-BAH; *U.S. v. Griffith*, 21-cr-204-BAH; *U.S. v. Torrens*, 21-cr-204-BAH; *U.S. v. Gruppo*, 21-cr-391-BAH; *U.S. v. Croy*, 21-cr-162-BAH; *U.S. v. Fox*, 21-cr-435-BAH; *U.S. v. Krzywicki*, 21-cr-596-BAH; *U.S. v. Persick*, 21-cr-485-BAH; *U.S. v. Munn*, 21-cr-474-BAH; *U.S. v. Horvath*, 22-cr-192-BAH; *U.S. v. Javid*, 22-cr-77-BAH.  In a number of these cases, the defendant did not have a family that was financially dependent on him or her, as with Brown.

Second, a term of incarceration would create unwarranted disparities between Brown's sentence and sentences imposed on § 5104(e)(2)(G) defendants by other judges in this district.  In most instances, the conduct of these probationary misdemeanants was more disruptive than Brown's.  Department of Justice January 6 Sentencing Chart, dated Aug. 15, 2023, available at: https://www.justice.gov/file/1593211/download.  Here are some examples:

| 1/6 Def. & Case No. | Charge | Sentence | Offense Conduct |
|---|---|---|---|
| Josh & Jessica Bustle, 21cr238 | Parading in Capitol | 24 mos. probation and 24 mos. supervised release | Entered Capitol Building, remained for 20 minutes. Posted on Facebook, "Pence is a traitor. We stormed the capital (sic). . . We need a revolution!" |
| Bryan Ivey, 21cr267 | Parading in Capitol | 36 mos. probation | Entered Capitol Building through a breached window, waving additional rioters into the building, spending 30 minutes inside. |
| Valerie Ehrke, 21cr97 | Parading in Capitol | 36 mos. probation | Entered Capitol Building. |
| Andrew Bennett, 21cr227 | Parading in Capitol | 3 mos. home confinement, 24 mos. probation | Entered the Capitol Building, livestreaming the event on his Facebook page for over an hour. |
| Lori, Thomas Vinson, 21cr355 | Parading in Capitol | 5 years probation, 120 hours of community service | Entered the Capitol Building, later telling news outlet that her actions were "justified" and that she would "do this all over again." |
| Jordan Stotts, 21cr272 | Parading in Capitol | 24 mos. probation | Entered the Capitol Building, remained inside for an hour, celebrating with others and taking videos with his cell phone. |
| Douglas Sweet, Cindy Fitchett, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, Fitchett filming herself saying, "We are storming the Capitol. We have broken in." |
| Rasha Abdual-Ragheb, 21cr42 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, desiring to |

| | | | |
|---|---|---|---|
| | | | demonstrate against Congress. |
| Jonathan Sanders, 21cr384 | Parading in the Capitol | 36 mos. probation, 60 hours community service | Entered the Capitol Building, intending to protest presidential election |
| Michael Orangias, 21cr265 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures inside. |
| John Wilkerson, 21cr302 | Parading in the Capitol | 36 mos. probation, 60 hours of community service | Entered the Capitol Building, posting on social media, "today was a good day, we got inside the Capitol." |
| Brandon Nelson, 21cr344 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, co-defendant texting, "We stormed the Capitol and shut it down. Currently still inside" and "Patriots won't go down without a fight." |
| Andrew Wrigley, 21cr42 | Parading in the Capitol | 18 mos. probation | Entered the Capitol Building, taking pictures of himself inside |
| Jacob Hiles, 21cr155 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures showing him smoking "an unknown substance" inside. |
| Bruce Harrison, 21cr365 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures of himself inside. |
| Terry Brown, 21cr41 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, disobeyed police order to leave. |
| Felipe Marquez, 21cr136 | Disorderly conduct in the Capitol | 18 mos. probation | Entered the "hideaway" office of Senator Merkley, saying, "We only |

| | | | |
|---|---|---|---|
| | | | broke a couple windows." |
| Michael Rusyn, 21cr303 | Parading in the Capitol | 24 mos. probation | Among the first to enter the Capitol through a certain door, part of a group of people who shouted, "Tell Pelosi we're coming for that b****," called police traitors, and shouted "Stop the steal." |
| Andrew Hatley, 21cr98 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures with various historical statues. |
| Nicholas Reimler, 21cr239 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, taking pictures of himself and friends. |
| Caleb Jones, 21cr321 | Parading in the Capitol | 2 mos. home confinement, 24 mos. probation | Entered the Capitol Building, "walking down numerous hallways and into the Capitol Rotunda." |
| Anthony R. Mariotto, 21cr94 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building, posting on Facebook, "This is our house" under selfie photograph. |
| Michael Stepakoff, 21cr96 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, posting on social media after, "The Capitol is OUR house, not theirs." |
| Tanner Sells, 21cr549 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building. |
| Gary Edwards, 21cr366 | Parading in the Capitol | 12 mos. probation | Entered the Capitol Building, including Senate office S140. |
| Zachary, Kelsey Wilson, 21cr578 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, penetrating all the way to the Speaker's personal office |

| Jennifer Parks, Esther Schwemmer, 21cr363 | Parading in the Capitol | 24 mos. probation | Entered the Capitol Building, taking pictures inside |
| Jackson Kostolsky, 21cr197 | Parading in the Capitol | 36 mos. probation | Entered the Capitol Building |
| Eduardo Gonzalez, 21cr115 | Parading in the Capitol | 24 mos. probation | Entered the Capitol, smoking marijuana inside "multiple times." |
| Israel Tutrow, 21cr310 | Parading in Capitol | 36 mos. probation | Entered the Capitol Building with a knife |

In short, sentencing Brown to a term of incarceration would create dozens or even hundreds of unwarranted sentence disparities.

**C.    The seriousness of the offense and deterrence (§ 3553(a)(2))**

The Court must consider "the need for the sentence imposed . . . to reflect the seriousness of the offense" and to "afford adequate deterrence to criminal conduct" and to "protect the public from further crimes of the defendant." § 3553(a)(2).

Brown is a man in his 60s, and father of nine children, with no criminal history who is convicted of a Class B misdemeanor.  Those biographical facts alone imply he is highly unlikely to recidivate.  *Recidivism Among Federal Offenders*: *A Comprehensive Overview*, U.S. Sentencing Commission, Mar. 2016, p. 23, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf (defendants older than 60 at sentencing have a rearrest rate lower than 15%)  Prior to January 6, nonviolent demonstrators at the Capitol who violated relevant law were typically penalized under a process called "post and forfeit": they paid to have their demonstration-related case dropped for approximately $25-100.  ACLU, District of Columbia, Demonstrations in D.C., available at: https://www.acludc.org/en/know-your-rights/know-your-rights-demonstrations-dc.  That was deemed sufficient deterrence.  In contrast,

Brown was charged with a crime in federal court.  FBI agents came to his home.  A sentence of

incarceration—along with a loss of employment and its destabilizing effect on his family—is not

needed to deter Brown from entering the Capitol again without authorization.  Together with

scathing media criticism and social ostracization, a federal conviction, sentence of probation, and

significant fine will well and truly deter Brown.  The heavy shame Brown has experienced is

itself a guarantee of deterrence.  *See*, *e.g.*, *United States v. Polizzi*, 549 F. Supp. 2d 308, 449

(E.D.N.Y. 2008) (specific deterrence satisfied by "intense shame created by the convictions);

*United States v. Maynard*, 2020 U.S. Dist. LEXIS 179542, at *5 (E.D.N.Y. Dec. 17, 2012)

(Weinstein, J.) (same).

**Conclusion**

For all the foregoing reasons, Brown respectfully requests a sentence of 12 months'

probation, a $4,452 fine, and $500 in restitution.

Dated: September 3, 2023                    Respectfully submitted,

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com


*Attorney for Keith Brown*

**Certificate of Service**

I hereby certify that on the 3rd day of September, 2023, I filed the foregoing submission with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF user(s): Counsel of record.

And I hereby certify that I have mailed the document by United States mail, first class postage prepaid, to the following non-CM/ECF participant(s), addressed as follows: [none].

*/s/ Nicholas D. Smith*
Nicholas D. Smith (D.C. Bar No. 1029802)
1123 Broadway, Suite 909
New York, NY 10010
Phone: (917) 902-3869
nds@davidbsmithpllc.com


*Attorney for Keith Brown*

11