UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 23-cr-00197 (BAH) |
| v. | : | |
| | : | |
| KEITH BROWN, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S STATUS REPORT**

By a Minute Order dated May 29, 2024, the Court directed the United States to provide a Status Report updating the Court as to the posture of this post-conviction matter, and provide responses to four specific questions posed by the Court to the United States. What follows is the United States' response to the Court's Minute Order and its request for a Status Report.

I. Government's Response to Minute Order Question One

The Court's first request of the United States in its May 29th Minute Order is to address "whether intermittent confinement, pursuant to 18 U.S.C. § 3563(b)(10), can be accommodated anywhere else in New Jersey." By way of background, the United States Probation Office's (USPO) Petition (*see* ECF 25, at 2) states that "[t]he Warren County Corrections Department does not accommodate weekend custody sentences." *Id*. While it does not contest this specific statement as to the capacity of the Warren County Corrections Department to accommodate weekend confinement, the United States has conferred with the U.S. Bureau of Prisons (BOP)—including staff at the Northeast Region office (NER), which is responsible for all BOP and BOP-contracted facilities in the Defendant's immediate area, as well as staff at the BOP Philadelphia Residential Reentry Management Center (PRRMC), which is responsible for BOP and BOP-contracted residential reentry facilities in the Defendant's immediate area—and can confirm for the Court

that BOP-contracted facilities in the Defendant's immediate area, including New Jersey, could accommodate intermittent confinement in the context of a residential reentry facility.

Specifically, the United States was informed by BOP NER office staff and PRRMC staff that the Court's sentence could be carried out in New Jersey at either the Kintock-Newark or Kintock-Bridgeton residential reentry facilities.[1] The Kintock-Newark facility is approximately 60 miles from the Defendant's residence and the Kintock-Bridgeton facility is approximately 120 miles from the Defendant's residence. Therefore, it is the United States' understanding—from conferring with BOP—that intermittent confinement could be arranged in New Jersey. Moreover, the United States was informed by PRRMC staff that both Kintock locations currently have bed availability.[2] The Kintock-Newark facility currently has bed availability for July 2024 and the Kintock-Bridgeton facility is currently able to place individuals within a month of a request by BOP and the USPO.

However, the United States was also informed by the BOP NER office that if the Court directed "secure confinement"[3] during the mandated period of confinement, this could be achieved at either a BOP facility in the NER (like the Philadelphia Federal Detention Center, which is approximately 70 miles from the Defendant's residence) or a BOP-contracted county jail in the wider NER. One such example is the Lackawanna County Prison in Scranton, Pennsylvania, which

---

[1] The Kintock Group is a BOP-contracted provider of residential reentry services in New Jersey.
[2] This information is current as of June 6, 2024.
[3] As communicated to the United States by BOP personnel, "secure confinement" would substantially limit the Defendant's freedom during his term of confinement and more closely track with the experience of serving prison or jail time. By way of example, in the "secure confinement" context, the Defendant would be required to remain within the confines of the correctional facility, while in a residential reentry facility the Defendant would potentially have more freedom to come and go, dependent on the Court's directives to BOP and USPO.

is a BOP-contracted facility and is approximately 70 miles from the Defendant's residence.[4] The United States was also informed that, absent a Court directive for "secure confinement" during the period of confinement, BOP would likely direct the Defendant to a BOP-contracted community facility (e.g., a residential reentry facility) in the NER. However, this form of confinement would not satisfy a requirement for "secure confinement" should the Court direct such confinement.

In order to fulfill the Court's original sentence, the United States thus requests that intermittent confinement be authorized in the manner intended by the Court. In the alternative, the United States requests that the Court clarify that the sentence be one of "secure confinement".

II.     Government's Response to Minute Order Question Two

The Court's second order is to address "whether residing at a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons), pursuant to 18 U.S.C. § 3563(b)(11), is an available alternative in Warren County and/or New Jersey." As detailed above, the BOP NER office and PRRMC office informed the United States that placing the Defendant at a BOP-contracted residential reentry facility would be possible here. While neither of the BOP-contracted residential reentry facilities noted above—Kintock-Newark and Kintock-Bridgeton—are located in Warren County, both are located in New Jersey. As also noted above, the United States was informed by the BOP NER office that such a residential placement would not qualify as "secure confinement," but rather a form of confinement that would permit the Defendant substantially more freedom than placement in a prison or jail. However, residential placement in a community corrections facility, while not "secure confinement" as described by BOP, would entail more confinement than the program proposed by USPO in their Petition, which

---

[4] Per the BOP PRRMC, the Defendant could also be placed at the Cumberland County Prison in Carlisle, Pennsylvania, which is a BOP-contracted facility and is approximately 120 miles from the Defendant's residence.

3


appears to be a work release or community service program. In light of the Court's original sentence, while the United States believes this to be a workable alternative, it maintains that the Court's intermittent confinement imposition fulfills the goals of sentencing under section 3553(a).

    III.    <u>Government's Response to Minute Order Question Three</u>

The Court's third request of the United States in its May 29th Minute Order is to address "what alternative to the CLAP program the government would propose." By way of brief procedural background, at the time of the United States' objection to USPO's request for sentence modification—which was transmitted to the United States on April 3, 2024—USPO's sole proposed modification was ten days of home confinement rather than this Court's order of ten days of intermittent confinement at a "facility designated by [BOP]". *See* ECF 22, at 5. The United States objected to that proposal as it appeared a substantial deviation from this Court's judgment and rationale. The United States did not receive any further substantive proposed alternatives until the USPO filed its Petition on May 28, 2024. Per the Petition, the USPO is now recommending the "CLAP program," which appears to be a form of work-release or community service that would allow the Defendant to report for eight-hour shifts on Saturdays and Sundays. *See* ECF 25, at 2. As detailed above, the United States has confirmed that a number of BOP or BOP-contracted facilities within a reasonable distance of the Defendant's residence could accommodate either "secure confinement" (e.g., at a prison or jail) or confinement at a residential reentry facility (e.g., a halfway house). The United States' position is that either of these alternatives is more consistent with the Court's sentencing and judgment than USPO's proposed work-release or community service modification, which would allow the Defendant to serve intermittent eight-hour work shifts rather than the intermittent confinement ordered by this Court.

IV.     Government's Response to Minute Order Question Four

The Court's fourth request of the United States in its May 29th Minute Order is to address "what conferrals they have had with officials at the Bureau of Prison, New Jersey's Probation Office, and any other relevant stakeholders." The United States has conferred with multiple elements of the BOP system, including personnel at two New Jersey BOP facilities: Federal Correctional Institution Fairton and Federal Correctional Institution Fort Dix. The United States also conferred with the BOP NER office, which covers all BOP and BOP-contracted facilities in New Jersey, Pennsylvania, New York, and seven other states, as well as the PRRMC, which is responsible for BOP and BOP-contracted residential reentry facilities in the Defendant's immediate area. Since transmission of the USPO's request for modification, which the United States received on April 3, 2024, the United States has been in regular communication with the USPO's D.C. branch office. The United States also communicated with the USPO's New Jersey branch office on June 5, 2024 and June 6, 2024.

V.      Conclusion

The United States respectfully maintains its objection to both iterations of USPO's modification request on the grounds that this Court ordered intermittent confinement following the Defendant's conviction, and neither iteration of USPO's proposed modification is consistent with the nature or substance of the Court's sentencing order. Moreover, the United States' conferral with BOP has confirmed that options are available to satisfy the Court's sentencing order. As such, the Petition should be denied and the Defendant should be directed to serve the remainder of his sentence in a manner consistent with the Court's directive and judgment.

                                                                Respectfully submitted,

                                                                MATTHEW M. GRAVES
                                                                United States Attorney

        District of Columbia
        Bar No. 481052


By: */s/Benjamin J. Smith*
   Benjamin J. Smith
   Assistant United States Attorney
   N.Y. Bar Number 5220637
   United States Attorney's Office
   District of Columbia
   601 D Street, N.W.
   Washington, D.C. 20530
   202-304-0977 (c)
   202-252-2428 (o)
   Benjamin.smith4@usdoj.gov